**NOT FOR PUBLICATION**                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

FRANCIS DUPONT, JR.                              :
                                                 :
                                                 :
                    Plaintiff,                   :
                                                 :          Civil Action No. 08-1724 (JAP)
                    v.                            :
                                                 :
FRANK SKLARSKY, *et al*,                          :
                                                 :          **OPINION**
                                                 :
                    Defendants.                  :
_____:

PISANO, District Judge.

This matter comes before the Court upon the motion of Defendants Frank Sklarsky, Chairman of the Traditional Kodak Retirement Income Plan ("KRIP"); Robert Berman, member of the Traditional KRIP Committee; Robert Leonard, member of the Traditional KRIP Committee; Willard Love, member of the Traditional KRIP Committee; Joyce Haag, member of the Traditional KRIP Committee; KRIP; the KRIP Committee; and Eastman Kodak Company ("collectively Defendants"), to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons discussed below, Defendants' Motion to Dismiss is granted.

## I.      BACKGROUND

Plaintiff, Francis Dupont, began working for Eastman Kodak Co. ("Kodak") in September 1975.  ("Am. Compl.") Am. Compl. ¶ 22.  Around September 1980, Plaintiff became

1

a participant in the traditional KRIP.  *Id.* ¶ 23.  The traditional KRIP is a "defined benefit pension plan which offers a retirement annuity to employees covered under the Plan based upon accrued service and average participating compensation at the time an employee leaves the company." *Id.* ¶ 16.  This is distinguished "from a later version of the KRIP which features the option of cash balance retirement benefits and a company match to employee contributions made to the Kodak Savings & Investment Plan ("SIP")."  *Id.* ¶ 17.

Plaintiff held various positions in sales and sales management until January 1, 1997 when part of Kodak was sold to Danka Office Imaging ("Danka") and he became a Danka employee. *Id.* ¶ 24-25.  Upon his transfer to Danka, Plaintiff continued to participate in the traditional KRIP and received an additional employment benefit.  *Id.* ¶ 26.  Specifically, Danka employees who participated in the traditional KRIP were awarded 1.5 percent increases in their pension entitlements for each six-month period of employment at Danka.  *Id.* ¶ 27.

In early 1999, Plaintiff voluntarily resigned from Danka.  *Id.* ¶ 36.  According to the January 1997 summary plan description ("SPD"), in place at the time, Plaintiff was "eligible to receive a retirement benefit immediately if [he was] a Lump-Sum Eligible Participant. Otherwise, [he was] eligible to receive a retirement income benefit payable at age 65 or as early as age 55 if [he had] at least 10 years of total service."  *Id.* ¶ 29.  Plaintiff elected to take a lump sum distribution which amounted to $116,869 at the time of his resignation.[1]  *Id.* ¶ 51-52.

In retrospect, Plaintiff claims that he was not adequately informed about his options. Specifically, Plaintiff contends that the January 1997 SPD did not mention the fact that Kodak

---

[1]Plaintiff alleges that the "actual lump sum value of ... [his] pension entitlement was about $146,095, an amount 20 percent more than the $116,869 he received."  Am. Compl. ¶ 54.

might amend the KRIP terms in the future to recognize service at other employers.  *Id.* ¶ 33.

Similarly, Plaintiff asserts that the January 1997 SPD did not mention the "potential of

participants in the traditional KRIP Plan to have their retirement benefits 'grow' and experience

an exponential increase in value in the event they terminated their employment with Kodak, but

were later restored as Kodak employees since the acquisition of additional time in service as a

Kodak employee would be used as a factor in calculating the retirement benefits for which they

would have been eligible had they remained as participants in the traditional KRIP Plan."  *Id.* ¶

34.

He further alleges that he relied on Defendants' representations made in Question and

Answer ("Q&A") documents that his participation in the KRIP would not grow since he was no

longer an employee of either Kodak or Danka.  *Id.* ¶ 48-51.  Plaintiff contends that Defendants

failed to provide him with any information about the benefits of remaining a plan participant and

concealed the likelihood that his future employer may be purchased by Kodak and he restored as

a Kodak employee.  *Id.* ¶ 49.  According to Plaintiff, Kodak had a history of including

employment at off balance sheet subsidiaries or joint ventures in retirement benefit calculations.

*Id.*

Plaintiff briefly returned to work at Danka in the Fall of 1999, but was subsequently hired

by Heidelberg Digital, L.L.C. ("Heidelberg") as a sales representative in 2000.  *Id.* ¶ 55-56.  In

May 2004, Kodak purchased all of Heidelberg's stock and merged it with NexPress Solutions

("NexPress").  *Id.* ¶ 57.  For the next several years, Plaintiff was employed by NexPress until it

was acquired by Kodak during the Spring of 2006.  *Id.* ¶ 58.  Plaintiff once again became a

Kodak employee and a KRIP participant.  According to the KRIP requirements, all former Kodak

employees rehired after December 31, 2002, who had previously taken a distribution, must participate in the KRIP cash balance formula instead of the traditional KRIP.  Defs.' Br., Obstarczyk Decl. ("Decl.") Exh. A, § 3.05©)).

On January 1, 2007, the traditional KRIP was amended to include employment at off balance sheet subsidiaries and joint ventures in calculating accrued and total service with Kodak. Am. Compl. ¶ 45.  Based on this amendment, Plaintiff alleges that he would have received credit in the traditional KRIP for his time at Heidelberg and NexPress, had he not been induced to sell his participation in the plan.  *Id.* ¶ 59.

Plaintiff remained an employee at Kodak until his retirement on July 1, 2007.  *Id.* ¶ 60. Prior to his last day with Kodak, Plaintiff was informed that he was "not eligible for Kodak-funded subsidized welfare benefits such as health, dental and life insurance" under the Kodak Medical Assistance Plan ("KMAP") because he was not a traditional KRIP participant.  *Id.* ¶ 61.

In an attempt to comply with Kodak's claim review procedures, Plaintiff appealed his treatment as a cash balance retiree who was not eligible for the Kodak funded medical benefits in a letter dated March 9, 2007.  *Id.* Exh. A.  He stated that he was not informed of the impact on his post-retirement medical benefits when he agreed to take the lump sum distribution upon his departure from Danka.  *Id.*   In a response dated September 7, 2007, Kim Chesher ("Chesher") from the Kodak Employee Service Center, denied his appeal and informed Plaintiff that in order to remain in the traditional KRIP, he would have had to defer his entire KRIP benefit.  Am. Compl. Exh. B.  Chesher stated that if Plaintiff remained dissatisfied and wished to further appeal, he could write a letter to the Plan Administrator seeking final review within 60 days.  *Id.* Plaintiff sent a letter to the Plan Administrator on October 11, 2007 stating that he did not

believe that all of his concerns were properly addressed and sought reconsideration of the issues. Am. Compl. Exh. C.  Subsequently, on January 31, 2008, Plaintiff's Counsel sent a letter to the KRIP Committee advising them of potential claims if Plaintiff was not reinstated in the traditional KRIP and alleging that Plaintiff's 1999 distribution was improperly calculated.  Am. Compl. Exh. D.  Patricia Obstarcyzk ("Obstarcyzk"), Director of Global Benefits Organization at Kodak, responded to Plaintiff's and Counsel's letters on February 7, 2008.  Am. Compl. Exh. E. Obstarcyzk stated, among other things, that Plaintiff's claims were untimely under KRIP and KMAP, the disclosure provided to Plaintiff was adequate, and that Plaintiff suffered no damages because it was not certain that he would have made a different decision had he known about his other options.  *Id.*  She further informed Plaintiff that even if he had elected to take the annuity, that option would have counted as a KRIP distribution.  *Id.*  According to the terms of the KRIP, once he was rehired, he would have become a cash balance participant and thus in the same position.  *Id.*

On April 7, 2008, Plaintiff filed a five-count Complaint against Defendants asserting various violations of the Employee Retirement Income Security Act ("ERISA"), a claim of misrepresentation and mutual mistake, a breach of fiduciary duty claim, and claims predicated upon a conspiracy to defraud.  Compl. ¶ ¶ 56-83.  These claims were based on events surrounding Plaintiff's decision to take the 1999 distribution from his pension.  In lieu of an Answer, Defendants' moved to dismiss the Complaint.  Subsequently, Plaintiff amended his Complaint on August 29, 2008 to assert only the three ERISA claims.  Am. Compl. ¶ ¶ 73-96.

Specifically, in Count I Plaintiff asks this Court to enforce Section 7.06 of KRIP terms pursuant to ERISA Section 502(a)(1)(B).  *Id.* ¶ 73-76.  Section 7.06 of the KRIP provides, in

relevant part:

> If a Participant or his beneficiary under the Plan received a distribution under the Plan which was determined by KRIPCO to have been made improperly, such Participant or beneficiary will have the right to restore his Accrued Benefit ... to the extent forfeited.  In addition, to the extent a Participant or his beneficiary was not given the proper information regarding the form or timing of benefit options under the Plan, such Participant or his beneficiary will be given the opportunity through appropriate corrective action taken by KRIPCO to elect any such optional forms of benefit.

Decl. Exh. A, § 7.06.

In Count II, Plaintiff seeks an equitable lien on the monies held by KRIPCO "in trust to pay retirement benefits to plan participants who are reinstated to their position as participants in the traditional KRIP" pursuant to ERISA Section 502(a)(3).  Am. Compl. ¶ 80.  Finally, Plaintiff contends that he was discharged in order to prevent him from obtaining the maximum amount of pension benefits that he was entitled to in violation of ERISA Section 510.  *Id.* ¶ ¶ 89-96.  On October 1, 2008, Defendants moved to dismiss the Amended Complaint.  Plaintiff opposed this motion and sought leave to file a Second Amended Complaint.  For the reasons discussed below, the Amended Complaint is dismissed in its entirety and Plaintiff's request to file a Second Amended Complaint is denied.

## II.    DISCUSSION

### A.    Standards of Review

Defendants seek dismissal of the Amended Complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of claims based on a lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When considering a motion to dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1), a court attaches "no presumptive truthfulness" to the allegations of the non-moving party, and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Challenges to jurisdiction under 12(b)(1) may be either facial or factual. *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002). A facial attack challenges the sufficiency of the pleadings and "the trial court must accept the complaint's allegations as true." *Id.* However, in a factual attack, plaintiff's allegations are afforded no presumption of truthfulness therefore "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." *Id.* The plaintiff bears the burden of establishing that jurisdiction exists. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006); *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Refashioning the appropriate standard, the United States Supreme Court found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal

quotation marks omitted)).  Therefore, for a complaint to withstand a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a

right to relief above the speculative level, . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 127 S. Ct. at 1965 (internal citations

and footnote omitted).

    **B.**    **Analysis**

    1.   <u>Standing</u>

Defendants contend that Plaintiff lacks standing under ERISA because he received the

full value of his traditional KRIP benefits when he took distributions in 1999 and 2007.  Defs.'

Br. p. 10-13.  On the other hand, Plaintiff claims that he has standing as both a former and

current KRIP member.  Specifically, Plaintiff contends that he did not receive the full value of

his participation since he was not awarded the benefit of the 2007 amendment to the traditional

KRIP, which would have credited him for his six years at Heidelberg.  Pl.'s Br. p. 7.  Similarly,

Plaintiff argues that he remains a participant in the traditional KRIP because he did not receive

the full value of his benefit in 1999 since he was a victim of the Defendants' scheme to induce

him to sell his participation in the traditional KRIP.  *Id.* at 8.

Under ERISA, only "participants, beneficiaries, fiduciaries, and the Secretary of Labor"

have statutory standing.  *Graden v. Conexant Sys.*, 496 F.3d 291, 295 (3d Cir. 2007).   A

participant is "any employee or former employee . . . who is or may become eligible to receive a

benefit of any type from an employee benefit plan."  29 U.S.C. § 1002(7); *Id.* at 296.  A former

employee may be considered a participant if he "ha[s] . . . a reasonable expectation of returning

to covered employment" or has "'a colorable claim' to vested benefits."  *Shawley v. Bethlehem*

*Steel Corp.*, 989 F.2d 652, 656 (3d Cir. 1992) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989)).

The Court finds that Plaintiff lacks standing under ERISA as both a current and former participant.  First, Plaintiff has taken his full distributions from KRIP both in 1999 and upon his retirement in 2007; thus he is not a current participant.  Although, Plaintiff argues that Defendants concealed the fact that Kodak may amend KRIP in the future to recognize service at other employers, this argument is based on the assumption that Kodak knew, in 1999, of the possibility of a 2007 amendment.  Plaintiff does not allege any facts suggesting that Kodak had such foresight and the Court finds that this possibility is too speculative to classify Plaintiff as a current participant in the KRIP.

Second, Plaintiff lacks standing as a former participant.  Plaintiff has not alleged that he "ha[s] . . . a reasonable expectation of returning to covered employment" since he voluntarily retired from Kodak in 2007.  *Shawley*, 989 F.2d at 656.  Additionally, Plaintiff has no "'colorable claim' to vested benefits." *Id.*  As will be discussed in great detail below, the statute of limitations has run on his Section 502(a)(1)(B) claim where he challenges the value of his 1999 payment.  Furthermore, the Court finds that Plaintiff's allegation that he should have received $146,095 in 1999 (instead of $116,869) under the traditional KRIP is without merit.  Defendants hired an independent actuarial consultant who recalculated and confirmed that Plaintiff's lump sum distribution in 1999 was $116,869.  Decl. Exh. H.  Since the Court may consider evidence outside the pleadings under 12(b)(1), the Court finds that this calculation represents the value of Plaintiff's 1999 pension entitlement.  *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 579 (D.N.J. 2002) (court considered evidence outside the pleadings in standing analysis).  As such,

Plaintiff lacks standing under ERISA because he does not qualify as either a current or former participant.

2.      Exhaustion

_____Next, Defendants contend that Plaintiff is precluded from bringing suit because he has failed to exhaust his administrative remedies.  ERISA itself does not require a plaintiff to exhaust his administrative remedies before filing suit.  *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007).  Instead, "it is a judicial innovation fashioned with an eye toward 'sound policy.'" *Id.* (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).  The Third Circuit requires exhaustion when the plaintiff seeks to enforce the terms of the benefit plan but not when he asserts statutory rights under ERISA.  *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986).  However, when the statutory claim "merely recasts [a] benefits claim in statutory terms" the Third Circuit has held that exhaustion is required.  *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 252 (3d Cir. 2002).  As such, a court must first determine whether or not the plaintiff is seeking to enforce the terms of the benefit plan.  *Falcone v. Teamsters Health & Welfare Fund*, 489 F. Supp. 2d 490, 492 (E.D. Pa. 2007).

In the case at bar, the Court finds that the overall remedy Plaintiff seeks is reinstatement in the traditional KRIP in order to obtain the benefits he claims he is entitled.  Am. Compl. ¶ 76, 88, 96.  Because Plaintiff seeks enforcement of the KRIP terms, he is required to exhaust his administrative remedies.

KRIP provides a detailed claims review procedure that must be satisfied prior to filing an administrative action with respect to any claims.  Decl. Exh. A, § 13.03(d).  KRIP requires an administrative claim to be filed according to the following deadlines:

> <u>All claims</u> must be filed with KRIPCO, in a format acceptable to KRIPCO, <u>within</u> <u>one year</u> from the earlier of the dates in (A) or (B) below: (A) the date the person ... is first eligible for a distribution from the Plan; or (B) the date the person ... knows or with reasonable diligence should know that there is an issue, dispute, problem .... with respect to the Plan .... [W]ith respect to any such claims arising as a result of a Plan amendment or change, a person is deemed to know that there is an issue .... on the date the amendment or change is first communicated to the Participants.

*Id.* (emphasis added)

In his Amended Complaint, Plaintiff questions the circumstances surrounding his 1999 lump sum distribution. However, according to the portion of KRIP cited above, Plaintiff should have challenged the distribution in 2000, one year from the date that he was first eligible for a distribution from the Plan. Because he submitted his first appeal letter in 2007, his administrative claim is time barred under the terms of KRIP.

Similarly, Plaintiff's lawsuit is untimely under KRIP. *See Fontana v. Diversified Group Adm'rs, Inc.*, 67 Fed. Appx. 722, at *3-5 (3d Cir. May 13, 2003) (upholding the limitations period established in benefit plan); *Koert v. GE Group Life Assur. Co.*, 416 F. Supp. 2d 319, 322 (E.D. Pa. 2005) (same). Under KRIP a lawsuit must be filed the earlier of "90 days after the date of the Appeal Letter ... or 1 year from the date a cause of action accrues." Decl. Exh. A, § 13.03(e)(3)(A). Under this section, "a cause of action accrues upon a denial or repudiation by a Plan Party ... or should with reasonable diligence be known, to the Person bringing the Action, regardless of whether such person has filed a Claim in accordance with the provisions of this Section 13.03." *Id.* Here, Plaintiff's claims arise from the events surrounding his decision to take a lump sum distribution of his pension in 1999. Accordingly, his lawsuit would have been timely in 2000. Since his initial Complaint was filed in 2008, the Court finds his suit untimely

under KRIP.[2]

For the reasons expressed above, the Court finds that Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit.

    3.       Each Count of the Amended Complaint is Deficient

        a.       Count I: ERISA Section 502(a)(1)(B)

Plaintiff seeks reinstatement as a participant in the traditional KRIP under Section 7.06 of the plan documents. ERISA Section 502(a)(1)(B) allows a plan participant to assert a cause of action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Plaintiff argues that reinstatement is proper because he was not given accurate information in 1999 regarding his distribution options under KRIP. Am. Compl. ¶ 74, 76. However, the Court agrees with Defendants' contention that Plaintiff's claim under ERISA Section 502(a)(1)(B) is barred by both the statute of limitations and by the terms of the KRIP.

ERISA Section 502(a)(1)(B) does not provide a statute of limitations period. As such, federal courts apply the limitations period of the state law cause of action that is most analogous to the particular ERISA claim. *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992). The

---

[2]The Court also agrees with Defendants' argument that Plaintiff failed to raise all claims with the Plan Administrator prior to filing suit, as instructed by Section 13.03 of the KRIP terms. Specifically, throughout the appeals process, Plaintiff maintained that the only issue he was contesting was the denial of his eligibility for Kodak funded medical benefits. Am. Compl. Exh. A and C. He did not raise the issue of the improper calculation or demand to be reinstated as a traditional KRIP participant until his attorney submitted a letter on January 31, 2008. However, the Court finds that this letter was not filed in a timely fashion since it was submitted more than 60 days after Plaintiff's receipt of the letter denying his appeal, which violated the time requirements of Section 13.03(d)(3) of the Plan terms. As such, the Court finds that Plaintiff failed to raise all claims with the Plan Administrator prior to filing suit since these claims were not raised in a timely fashion.

Third Circuit applies the limitations period for a breach of contract cause of action to Section 502(a)(1)(B) claims, which is six years under New Jersey law. *Koert v. GE Group Life Assur. Co.*, 231 Fed. Appx. 117, 119 (3d Cir. 2007); *Klimowicz v. Unum Life Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 73162 at *15 (D.N.J. Sept. 28, 2007); N.J. Stat. Ann. § 2A:14-1. Dupont seeks to be reinstated in the traditional KRIP pursuant to ERISA Section 502(a)(1)(B) based on the events that occurred in 1999. Applying the six-year statute of limitations, the time to bring this ERISA claim expired in 2005. As such, Plaintiff's claim is time barred.

Additionally, the Court agrees with Defendants' argument that the language of the KRIP documents precludes reinstatement in the traditional KRIP. Section 7.06 of KRIP permits KRIPCO to take corrective action if a participant was not given proper information regarding the form or timing of his benefit options. Decl. Exh. A, § 7.06.

Plaintiff claims that he did not receive "accurate information regarding the form or timing of benefit options under the Plan." Am. Compl. ¶ 74. Specifically, Plaintiff argues that the January 1997 SPD did not mention "and the defendants otherwise concealed that if KRIP was again amended to recognize service at other employers . . . then their KRIP benefits would 'grow'." Am. Compl. ¶ 33. In the same vein, Plaintiff contends that document did not mention and the "defendants otherwise concealed the facts concerning the potential of participants in the traditional KRIP Plan to have their retirement benefits 'grow' . . . in the event they terminated their employment with Kodak but were later restored." *Id.* ¶ 34.

In order for Defendants to have given, what Plaintiff deems to be proper information, they would have had to know that they were going to amend KRIP in 2007 and that Plaintiff would be subsequently rehired by Kodak. The Third Circuit, and this Court, declines to impose such a

heightened duty of prescience on plan fiduciaries such as Defendants.  *See Fischer v. Philadelphia*, 994 F.2d 130, 135 (3d Cir. 1993) ("ERISA does not impose a 'duty of clairvoyance' on fiduciaries.  An ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan.").  As such, the Court finds that Plaintiff is not entitled to be reinstated under the terms of KRIP Section 7.06.

        b.      *Count II: ERISA Section 502(a)(3)*

Plaintiff seeks an equitable lien under ERISA Section 502(a)(3) on the monies held by KRIPCO because Defendants "failed to inform plan participants of all material facts required for them to make an informed decision as to whether to 'sell' their participation in the traditional KRIP Plan" in violation of their fiduciary obligations to Plaintiff.  Am. Compl. ¶ 85, 86. Defendants argue that the Plaintiff's claim must be dismissed because it is barred by the statute of limitations and because it otherwise fails to state a claim.

ERISA Section 502(a)(3) allows a plan participant to seek equitable relief.  Specifically, ERISA Section 502(a)(3) provides a:

> participant, beneficiary, or fiduciary [with the power] . . .  to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3).

> A Section 502(a)(3) claim is timely if Plaintiff commences the action

after the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. (emphasis added)

14

29 U.S.C. § 1113.

Plaintiff relies on the "fraud or concealment" provision to the three-year limitations period.  Am. Compl ¶ 82.  This extends the period to "six years after the date of discovery of such breach of violation."  29 U.S.C. § 1113.  The issue raised by this provision is "whether the fiduciary took steps to hide its breach so that the statute should not begin to run until the breach is discovered."  *In re Unisys ERISA Litig.*, 242 F.3d 497, 502 (3d Cir. 2001).  In addressing this issue, courts must decide "whether there is evidence that the defendant took affirmative steps [at any point] to hid its breach of fiduciary" . . . "not whether the complaint 'sounds in concealment.'"  *Id.*

Plaintiff claims that Defendants concealed the following information: (1) the likelihood that he would be restored to the Kodak payroll and that his time spent at Heidelberg would be included in the calculation of his benefits under the KRIP; (2) the amendment to the traditional KRIP; and (3) "the documents surrounding Kodak's transactions with Danka, Heidelberg, and NexPress."  Am. Compl. ¶ 81.  The Court finds that Plaintiff alleged no facts suggesting that Defendants took affirmative steps to conceal this information.  Additionally, Plaintiff has not pled facts indicating that he would not have taken the lump sum distribution if he had known about the recognition of future service.   Moreover, the Court finds that Defendants were under no obligation to provide Plaintiff with information relating to potential amendments to the KRIP.  *See Peterson v. AT&T*, 127 Fed. Appx. 67, 71 (3d Cir. 2005) (fiduciaries need only discuss amendments to pension terms that are under serious consideration) (citing *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1538-39 (3d Cir. 1996)).  Plaintiff, therefore, cannot utilize the "fraud or

concealment" provision of the limitations period.[3]

Next, Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because his Section 502(a)(3) claim is duplicative of his Section 502(a)(1)(B) claim. Defs.' Br. p. 33.  Plaintiff contends that his 502(a)(3) claim is not duplicative because he seeks different relief, an equitable lien, under 502(a)(3).  Pl.'s Opp. Br. p. 13.

Section 502(a)(3) serves as a "catchall provision" for plaintiffs who cannot otherwise bring a cause of action under the remaining sections of 502.  *Varity v. Howe*, 516 U.S. 489, 512 (1996).  In *Varity*, the United States Supreme Court held that: "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515. Since, the plaintiffs in *Varity* would have had no case at all if they could not rely on Section 502(a)(3), the Court permitted them to seek equitable relief under that provision.  *Id.*

In its interpretation of *Varity*, the Third Circuit stated that "where a participant or beneficiary seeks a remedy that is otherwise recoverable under other provisions of Section 502, the individual cannot also seek that same remedy via a breach of fiduciary duty claim under Section 502(a)(3)(B)'s catchall provision." *Precopio v. Bankers Life & Casualty Co.*, 2004 U.S.

---

[3]Plaintiff's Section 502(a)(3) claim is similarly time barred under 29 U.S.C. § 1113(1). The six year statute of limitations begins to run on "the last date on which a breach sufficient to serve as a basis for the complaint could have occurred."  *Martin v. Pub. Serv. Elec.*, 271 Fed. Appx. 258, 260 (3d Cir. 2008).  The events leading up to the breach of fiduciary duty occurred in 1999 when Plaintiff took his lump sum distribution.  As such, Plaintiff's claim expired in 2005. In his brief, Plaintiff argues that Defendants' breach is ongoing because they failed to provide Plaintiff with the documents surrounding Kodak's transactions with Danka, Heidelberg and NexPress.  Pl.'s Opp. Br. pp. 12-13.  The Court finds that this argument lacks merit because the Third Circuit has rejected the "continuing violation theory" in ERISA cases.  *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007).

Dist. LEXIS 30425, at *97 (D.N.J. Aug. 10, 2000) (citing Ream *v. Frey*, 107 F.3d 147, 152 (3d

Cir. 1997)).  Accordingly, where a Plaintiff has no alternative means of recovering losses, a

502(a)(3) claim is appropriate.  *See also Chang v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS

46815, at *10 (D.N.J. June 17, 2008) (granting motion to dismiss because plaintiff's 502(a)(3)

claim "appeared to be nothing more than an attempt to couch the request for relief it had

previously set forth .... in the language of equity); *Morley v. Avaya*, 2006 U.S. Dist. LEXIS

53720, at *68-69 (granting summary judgment on plaintiff's breach of fiduciary duty claim

because it did not "constitute 'additional relief' otherwise not provided for in Section

502(a)(1)(B).").

　　　In the case at bar, the Court finds that Plaintiff's remedy of an equitable lien does not

constitute additional relief that would not be provided through his 502(a)(1)(B) claim.  Although

Plaintiff is technically asking for two different forms of relief, he is essentially asking to be

reinstated in the traditional KRIP so as to receive the benefits that he deems his is entitled to

under the plan.  Plaintiff's 502(a)(3) claim is nothing more than an attempt to couch his previous

request for relief in the form of equity.  *Chang*,  2008 U.S. Dist. LEXIS 46815, at *10.  The

Court, therefore, dismisses Count II.

　　　　　*c.　　　Count III: ERISA Section 510*

　　　In Count III of his Amended Complaint, Plaintiff claims that Defendants violated ERISA

Section 510 when they interfered with his ability "to receive the benefit of the rising curve of

pension entitlements based on age and years of service" when he was transferred to Danka in

1997.  Am. Compl. ¶ 91.  Plaintiff calls this practice "fencing" and alleges that "[u]nder the

'fencing' procedure, a plan participant whose department had been transferred to Danka or a joint

venture such as NexPress Solutions, Inc. was not allowed to look for a job elsewhere in Kodak as previously had been the practice when there was a divestiture." Am. Compl. ¶ 92. Defendants contend that the statute of limitations has run and that Plaintiff has not pled a prima facie case.

ERISA Section 510 provides in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [or] this title . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, [or] this title . . .

29 U.S.C. § 1140.

Congress did not provide a statute of limitations for Section 510 claims. Accordingly, the statue of limitations is borrowed from state law, which is two years under Third Circuit jurisprudence. *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 778 (3d Cir. 2007).

After deciding the applicable limitations period, the court must identify when the period began to accrue. Under Third Circuit case law, the accrual rule depends on the type of allegedly unlawful conduct that serves as the basis of the Section 510 claim. *Id.* If the 510 claim stems from an unlawful termination of a plaintiff, "the claim accrues when the decision to terminate is made and the employee is informed of the pending termination." *Id.* at 780. However, in other cases, such as when a plaintiff complains of interference with the attainment of rights under the plan, a Section 510 claim begins to run "when the allegedly discriminatory decision was 'made and communicated' to the worker." *Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 494 (3d Cir. 2007) (citing *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140-41 (7th Cir. 1992)).

In the instant case, the Court finds that Plaintiff's Section 510 claim is time barred under both accrual rules. Plaintiff contends that because of the "fencing" procedure he was

18

"'discharged' in violation of Section 510 for the purpose of preventing him from obtaining the maximum amount of pension benefits" to which he was entitled. Am. Compl. ¶ 93. According to Plaintiff's Amended Complaint, there are two possible relevant time periods by which to measure the Section 510 claim. The first was when he was transferred to Danka in 1997 and was not permitted to look for another job at Kodak. *Id.* at 92-93. Alternatively, his claim could have begun to accrue when he was forced to take his lump sum distribution in 1999. *Id.* at 94-95. Applying the two-year limitations period, Plaintiff's claim expired in 1999 under the first scenario and in 2001 under the second. In his opposition brief, Plaintiff asserts that he was not aware of the "fencing" procedure until January 1, 2007, when the amendment to KRIP became effective. Pl.'s Opp. Br. p. 14-15. However, in his Amended Complaint, Plaintiff does not allege that the 2007 amendment formed the factual basis of his Section 510 claim - rather, he specifically points to the 1997 and 1999 periods. Because, in a Motion to Dismiss under 12(b)(6), the Court is only to consider the allegations on the face of the complaint, the Court declines to take this new allegation into account. *Desardouin v. UPS*, 285 F. Supp. 2d 153, 159 (2d Cir. 2003). Accordingly, Plaintiff's Section 510 claim has expired.

The Court now examines whether or not Plaintiff has pled a prima facie case. To establish a prima facie Section 510 claim a plaintiff must show that the "(1) employer committed prohibited conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled." *Jakimas*, 485 F.3d at 785; *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1982). A plaintiff must demonstrate that "'the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.'" *Jakimas*, 485 F.3d at 785 (quoting *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d

19

Cir. 2000) (internal citations omitted)).

The Court finds that Plaintiff's Amended Complaint does not set forth a prima facie

Section 510 claim.  Specifically, the alleged "fencing" procedure that Plaintiff contends

prevented him from looking for a job elsewhere in Kodak before he was transferred to Danka is

not prohibited conduct under Section 510.  *See Becker v. Mack Trucks*, 281 F.3d 372, 382 (3d

Cir. 2002) ("a failure to hire does not amount to a circumvention of promised benefits.").

Furthermore, Plaintiff has not pled facts suggesting that this occurred.  Moreover, the Court finds

that Plaintiff actually received a benefit through this transfer.  Plaintiff admitted that by

transferring to Danka he would receive a 1.5% increase in his pension entitlement for each six-

month period he was employed at Danka.  Am. Compl. ¶ ¶ 27, 31.  As such, the Amended

Complaint does not demonstrate that, through this "fencing" practice, the Defendants made a

"conscious decision to interfere with [his] attainment of pension eligibility or additional

benefits.'"  *Jakimas*, 485 F.3d at 785.  Accordingly, Count III is dismissed.

4.    Plaintiff's Amended Complaint Does Not Satisfy the *Twombly* Standard

Plaintiff's Amended Complaint is based on the theory that he may not have elected to

receive the lump sum pension distribution in 1999 had he known of the possibility that he would

eventually be rehired by Kodak and that KRIP would be amended to reflect service at previous

employers.  Plaintiff claims that this information was concealed from him, however, his

Amended Complaint is devoid of facts suggesting this concealment occurred.  Moreover,

Plaintiff offers no facts indicating that Defendants were seriously considering amending KRIP in

1999.  Furthermore, the Amended Complaint contains no factual allegations that Defendants

knew, in 1999, that Plaintiff would someday be once again employed by Kodak and therefore

induced him to cash out of his pension benefits.  Because Plaintiff's factual allegations are not

enough "to raise a right to relief above the speculative level," Plaintiff's Amended Complaint is

dismissed.  *Twombly*, 127 S. Ct. at 1965.

Finally, as the Defendants note, "Plaintiff has already had two bites at the apple, and his

lawsuit remains fatally flawed."  Defs.' Reply Br. p. 15.  As such, the Court finds that another

amendment would be futile and denies Plaintiff's request to file a Second Amended Complaint.

*See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002 ) (court may deny request

to amend if amendment would be futile).

## III.   CONCLUSION

For the reasons expressed above, the Court grants Defendants' Motion to Dismiss and

denies Plaintiff's request to file a Second Amended Complaint.  An appropriate order

accompanies this Opinion.

/s/ Joel A. Pisano

JOEL A. PISANO, U.S.D.J.

Dated: March 20th, 2009